## CONNOR v. UNITED STATES.
### No. 941.

District Court, D. New Hampshire.
April 26, 1937.

O. Walker Taylor, of Boston, Mass., for Connor.

Alexander Murchie, U. S. Dist. Atty., of Concord, N. H., for the United States.

MORRIS, District Judge.

This is an action against the United States brought under section 24 (20) of

the Judicial Code, as amended, section 41 (20) of title 28 of the United States Code (28 U.S.C.A. § 41 (20) by Arthur Jewett Connor of Exeter, county of Rockingham, state of New Hampshire, to recover the sum of $4,820.34 with interest representing a tax paid to the Dominion of Canada on income from sources in that country which was received by the petitioner during the year 1932, which sum petitioner claims should be credited on the income tax assessed against him by the Commissioner of Internal Revenue and paid by him to the collector of internal revenue at Portsmouth, N. H.

The question presented is whether or not the petitioner is entitled to a credit under section 131 of the Revenue Act (26 U.S.C.A. § 131 and note) effective in 1932 against the income taxes paid by him to the United States for the year 1932 of the income taxes paid by him to the Canadian government in 1934 for the year 1932, when petitioner is on the cash basis and did not signify in his income tax return for 1932 his desire to have the benefits of said section.

All of the income upon which the Canadian tax was paid was included in the gross income shown on the federal income tax return which the petitioner filed with the Commissioner for the year 1932 and a tax was assessed thereon.

The government contends that the credit of $4,820.34 was rightfully disallowed by the Commissioner of Internal Revenue under subdivision (a) of section 131 (26 U.S.C.A. § 131 (a) and note) because the petitioner did not claim the credit on his original 1932 tax return.

The petitioner claims (1) that he is entitled to the credit and an adjustment of his federal tax under subdivision (c) of section 131 (26 U.S.C.A. § 131 (c) and note) by virtue of the fact that he had no knowledge of his liability for the Canadian tax at the time he executed and filed his federal income tax return for the year 1932, and (2) that even if he were not entitled to such adjustment under the proper interpretation of subdivision (c), he is entitled to the adjustment on the basis of an amended return claiming the credit which meets the requirements of subdivision (a).

The government interposed a demurrer based practically on its present contentions which was overruled by the court

November 19, 1936. Thereafter the respondent filed an answer and the case was heard upon its merits February 9, 1937. The petitioner's brief was filed March 9, 1937, and the respondent's brief March 29, 1937.

### Statement of Facts.

On or about March 15, 1933, the petitioner filed his federal income tax return for the year 1932 disclosing income upon which a tax of $8,443.16 was assessed and paid to the collector of internal revenue at Portsmouth, N. H.; in four installments on the dates and in the respective amounts as follows:

| Date | Amount |
|---|---|
| March 18, 1933 | $2,200.00 |
| June 14, 1933 | 2,000.00 |
| September 13, 1933 | 2,243.16 |
| December 11, 1933 | 2,000.00 |
| Total | $8,443.16 |

On petitioner's federal income tax return for the year 1932 he included $31,320 which he had received during that year from sources within the Dominion of Canada, and at the time his said federal return was filed he had no knowledge and had never been advised or notified that the $31,320 was also subject to tax and would be taxed by the Canadian government.

Some time in October or November, 1933, the petitioner was notified by the Canadian officials that the $31,320 received by him from sources within that country was subject to the Canadian income taxes, payment of the tax was thereupon demanded and after much controversy and protest on the part of the petitioner a tax of $4,820.34 was finally paid to the Canadian government on February 6, 1934; and no part of said Canadian tax has ever been refunded or repaid to the petitioner. The rate of exchange at that time was such that the petitioner discharged his liability by payment in United States money of $4,784.19. Similar taxes were paid by the petitioner for the years 1930 and 1931, of which he had no notice until October or November, 1933.

Soon after the payment had been made to the Canadian government of the three years' taxes, approximately $12,000, the petitioner visited the office of the internal revenue agent in Manchester, N. H., to ascertain how to get a refund of the 1931 and 1932 taxes. The statute of limitations barred a refund of the 1930 tax. Petitioner's return for the 1931 tax had

been audited and he was advised by the agent to prepare and file a claim for refund for the amount of the Canadian tax assessment for the year 1931 and as his return for the year 1932 had not then been audited he could make his claim for that year when it was audited and it would be sent to Washington for a refund at that time.

Some time in May, 1934, he filed a claim for refund claiming the credit for the amount of the Canadian tax which he had paid for the year 1931 and that claim was allowed and refund granted and paid, but no claim for refund was made for the year 1930 because the refund of the tax for that year was barred by the statute of limitations.

On or about April 14, 1934, Internal Revenue Agent John A. Paige made an audit of the petitioner's return for the year 1932 and the question of the credit for the Canadian taxes was taken up with the agent, as a result of which he recommended to the Commissioner of Internal Revenue that the credit should be allowed and upon instructions to make a further investigation of the question, the revenue agent made a supplemental report on or about June 14, 1934, in which he again stated reasons and recommended that the petitioner should be allowed the benefits of the credits.

Some time after the revenue agent had made his report the Commissioner of Internal Revenue notified the petitioner by a certificate of overassessment that the credit would not be allowed, but that the petitioner was entitled to a refund of $78.54 on account of some other adjustments and that sum was subsequently paid to the petitioner. The petitioner's entire net income for the year 1932, as finally determined by the Commissioner and shown in the certificate of overassessment amounted to $53,716.03, of which $31,320 was from sources within Canada and $22,396.03 from sources within the United States. The total tax so determined and shown amounted to $8,364.62.

On February 9, 1935, the petitioner filed a claim for refund of $4,820.34, with interest, which set forth the same grounds as are alleged in the petition as a basis for recovery in this suit and the same claim was rejected on or about November 29, 1935.

On November 23, 1936, the petitioner filed an amended return for the year 1932 on Treasury Department Form 1040 on which he set forth all of the surrounding facts and claimed credit for the $4,820.-34 which he had paid to the Canadian government on February 6, 1934, and with this amended return the petitioner also filed Treasury Department Form 1116 being the prescribed statement in support of credit claimed.

Requests for special findings of fact were made by counsel for the parties, but as all requests appear to be covered by the above general findings, it does not seem necessary to further consider them.

### Conclusions of Law.

The statutes involved appear in the Revenue Act of 1932, chapter 209 (47 Stat. 169, 211), section 131 (26 U.S.C.A. § 131 and note):

*"Taxes of foreign countries and possessions of United States*

"(a) *Allowance of credit.* If the taxpayer signifies in his return his desire to have the benefits of this section, the tax imposed by this title [chapter] shall be credited with:

"(1) *Citizen and Domestic Corporation.* In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States." 26 U.S.C.A. § 131 (a) (1) and note.

Such credits are subject to certain limitations found in subsection (b) (1) (2), section 131 (26 U.S.C.A. § 131 (b). (1, 2) and note), which appear to be unimportant in this case.

"(d) *Year in which credit taken.* The credits provided for in this section may, at the option of the taxpayer and irrespective of the method of accounting employed in keeping his books, be taken in the year in which the taxes of the foreign country or the possession of the United States accrued. * * * If the taxpayer elects to take such credits in the year in which the taxes of the foreign country or the possession of the United States accrued, the credits for all subsequent years shall be taken upon the same basis, and no portion of any such.

taxes shall be allowed as a deduction in the same or any succeeding year.

"(e) *Proof of credits.* The credits provided in this section shall be allowed only if the taxpayer establishes to the satisfaction of the Commissioner (1) the total amount of income derived from sources without the United States, determined as provided in section 119, (2) the amount of income derived from each country, the tax paid or accrued to which is claimed as a credit under this section, such amount to be determined under rules and regulations prescribed by the Commissioner with the approval of the Secretary, and (3) all other information necessary for the verification and computation of such credits." 26 U.S.C.A. § 131 (d, e) and note.

For many years the government has been committed to the principle that a taxpayer paying taxes to a foreign government should receive credit therefor in some manner in reduction of his taxes payable to the United States government.

As the fact that the petitioner paid $4,820.34 to the Canadian government and a like amount on the same income to the United States on account of taxes assessed for the year 1932 is not questioned, justice requires that he be allowed to recover the same unless prevented by some positive statutory provision or rule of law.

In the earlier revenue laws, a taxpayer was allowed a reduction of the amount paid to a foreign government from his gross income. By the Revenue Laws of 1918 a taxpayer was allowed the privilege of crediting the amount paid against the taxes payable to the United States. Both the privilege of credit and the privilege of deduction were subject to the usual rule, that the credit of deduction must be taken in the proper year. If the taxpayer filed his income tax return on the cash receipts and disbursements basis, the credit or deduction must be taken in the year when the foreign taxes were paid. Similarly if a person were on the accrual basis, he could take a credit of deduction for foreign taxes only in the year when those taxes accrued. See Niles Bement Pond Co. v. United States, 281 U.S. 357, 50 S.Ct. 251, 74 L.Ed. 901.

In 1924 a change was made by section 222 (c) of the Revenue Act of 1924 (43 Stat. 279). A taxpayer on the cash basis was given the option of taking a credit for foreign taxes either in the year when they were paid or in the year when they accrued. But it was provided that if the taxpayer elected to take such credit on the accrual basis, credits for all other subsequent years must be taken on the same basis. The option given by the 1924 act has remained in all the subsequent Revenue Acts including section 131 (d) of the Revenue Act of 1932 (26 U.S.C.A. § 131 (d) and note).

In the Revenue Acts to and including the Revenue Act of 1928 which was in force until 1932, the privilege of credit against taxes was not dependent upon any statement in the return or other specific election by the taxpayer.

The act of 1932 a change was made in the introductory words in section 131. The act of 1928 (section 131 (a), 45 Stat. 829) began as follows: "(a) *Allowance of credit.*—The tax imposed by this title shall be credited with." Under those acts, the taxpayer was entitled to the privilege of credit as long as he asked for the credit and acquainted the government with the facts upon which his request was based, within the statutory period of limitations with regard to the taxable year in question.

Under the construction placed upon the 1928 act by the Commissioner, the petitioner in this case was permitted to obtain a refund of the amount paid the Canadian government assessed for the year 1931, but was refused a refund for the 1930 tax because of the two-year limitation in the statute.

The introductory language in the act of 1932 is as follows: "If the taxpayer signifies in his return his desire to have the benefits of this section." 26 U.S.C.A. § 131 (a) and note. Upon this change in language the Commissioner rejected petitioner's claim for a refund for the year 1932 because of the failure to claim a deduction in petitioner's return for that year.

Counsel for the government argues that such failure is conclusive and an absolute bar to any recovery in this case.

I cannot accept the interpretation put on the change in the statute by counsel for the government. It is my opinion that it was not designed as a prohibition or a limitation. Its object is to effect a more speedy administration of the law

and an early determination of government revenues. The law should not be so interpreted as to require the impossible. There is nothing sacred about a taxpayer's return. Lewis et al. v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L. Ed. 293. It is required as a means of bringing before the Commissioner facts necessary for the determination of the tax, and to prevent the taxpayer incurring penalties. It may be amended and in some particulars disregarded by the Commissioner in making his determination. Agents of the government are employed for the purpose of examining accounts of the taxpayer and upon the agent's report the Commissioner may make a deficiency assessment or a deduction from the tax shown on the original return. All the steps taken are in the interest of justice, equality, and accuracy. The language of Judge Morton in the case of United Shoe Machinery Corp. v. White (White, Collector, v. United Shoe Machinery Corporation), 89 F.(2d) 363 (C. C.A.) handed down April 5, 1937, is applicable to the facts in the instant case: "When the point on which a taxpayer disagrees with the Commissioner has been clearly stated in the discussions and was understood by the department when its ruling was made, the filing of a claim for refund is a mere formality, and the courts are disposed to go as far as possible in holding that the formality has been sufficiently met." See Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253; United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025; Raymond v. Commissioner, 34 B. T.A. p. 1171. In the last-mentioned case the Board of Tax Appeals in the course of the opinion said:

"In the administration of section 131, however, the element of time is not of such importance. The Commissioner suffers no detriment and gives up no right conferred by statute when he permits a taxpayer to file an amended return and claim a credit for foreign taxes against a tax which the Commissioner himself has computed on the return originally filed."

What I believe to be the law concretely applied to the facts in the instant case leads to the following conclusions: The petitioner filed in his original return for 1932 the amount of income derived from operations in Canada and the Commissioner assessed a tax thereon amounting to $4,820.34. At that time the petitioner had no reason to believe that a tax thereon would be assessed by the Canadian government as no such tax had been theretofore assessed.

The petitioner was not called upon to make any election under section 131 (a) as the word "election" signifies a choice between two or more methods. The petitioner in filing his 1932 return did what any honest taxpayer would do with the knowledge at hand. He included the Canadian income in his tax return. The first information he had that he was liable to an assessment under the Canadian laws came to him in the fall of 1933. After he had obtained advice and became satisfied that the tax was legally assessed against him, he paid the same on February 6, 1934. Soon thereafter he took the matter up with the local revenue agent at Manchester, N. H., to ascertain how he could obtain a refund. He was advised that the foreign tax assessed for the year 1931 would be credited on his tax assessed for that year which had been audited and it was so credited. He was further advised by the government agent that the foreign tax paid for 1932 would be reported and considered when his 1932 tax return was audited. Such audit had not then been made. It was later made by John H. Page, examining officer, who found an overassessment which he explained as follows: "The principle cause of the overassessment was due to the failure of the taxpayer to claim the allowed credit for foreign taxes accrued."

The Commissioner of Internal Revenue was fully informed with reference to the payment of a foreign tax and the refund claimed. The auditing agent in the computation of the petitioner's 1932 tax allowed the refund, but the Commissioner disallowed it. Later proceedings on the part of the taxpayer followed the usual course for obtaining a refund resulting in this action.

On or about November 23, 1936, the petitioner filed with the collector of internal revenue at Portsmouth "Statement in Support of Credit claimed on Individual Income Tax Return for taxes paid or Accrued to a Foreign Country" on Treasury Department Form 116. This to my mind was an unnecessary formality as the Commissioner of Internal Revenue had already passed upon the claim for refund

upon its merits after the audit was made by Federal Agent Page. See Bonwit Teller & Co. v. United States, 283 U.S. 258, 51 S.Ct. 395, 75 L.Ed. 1018; United States v. Henry Prentiss & Co., 288 U. S. 73, 53 S.Ct. 283, 77 L.Ed. 626.

I hold that the petitioner is not barred from obtaining a refund by reason of the fact that he did not "signify in his original return his desire to have the benefits of section 131 (a)." The statute should not be construed to require the impossible.

The order is judgment for the plaintiff in the sum of $4,784.19 with interest from the date of the several payments.